(Hamilton County Court of Common Pleas.)

FRANK RATTERMANN, County Treasurer of Hamilton County, Ohio v. SARAH M. PHIPPS et als.

1. *Omitting to list stocks for taxation—Intention to defraud—Belief in their non-taxability—When omission excusable*—Where the party omits to list stocks for taxation as to some of which there was no reason to believe them non-taxable, while as to others there was a general opinion that they were non-taxable, and where it plainly appears that there was a positive purpose to defraud in omitting to list the former stock, then it would be reasonable to attach the same fraudulent purpose to his omission to list the latter stocks, which were generally considered (although erroneously so) to be non-taxable, and charge the penalty as to them for such omission. But if the evidence shows that as to the latter stocks there was only a passive negligence or indolent belief in their non-taxability, this would excuse his failure to list such stock for taxation, if he could affirmatively show such a condition of fact by presentation of evidence as would rebut the prima facie presumption of intention to defraud against him.

2. *Intention to defraud—How overcome*—As to the question of the non-taxability of stocks, the taxpayer can be held to inquiry, only for the sake of making himself informed. But if the information comes to him unsought, that is sufficient. If a taxpayer believes stocks untaxable, and had presented to his mind sufficient information to justify that belief, then he is excused so far as the penalty for

his omission to list such stock for taxation is concerned. If knowledge upon the part of the taxpayer be shown, such as would cause a reasonable man to believe, the presumption is that he believed.

3. *Obligation to know action of public officers—Decisions of the Supreme Court—* While under the rules of evidence the action of public officers and of public bodies are admissible in evidence upon the theory that everybody within the jurisdiction of those tribunals is familiar with their action, yet that presumption is not conclusive. It is sufficient to establish the fact that the individual was familiar with the action, if, in the judgment of the tribunal before whom the case is being tried, he ought to have been. While it may be well said that a man would be familiar with the general results of the opinions of the Supreme Court, provided he has any interest in the case that was before it, yet it is not, in all cases, to be assumed that the man had every conceivable knowledge that a man could have from a close study of the case as reported, simply from the fact that the court opinion in the case, was made public.

4. *Action of Auditor—Not conclusive to party—*Where the auditor undertakes to tax stocks not heretofore believed taxable, a man may in spite of the action of the auditor in proposing to tax, believe, and may be justified in believing that the auditor is wrong. If he does not believe, and if he is justified in that belief, he is excused. Because the question is not "what does the auditor propose to tax?" but the question is "is the man justified in omitting that property which he failed to return?"

(Decided January, 1896.)

---

(This case was first tried in the Court of Common Pleas before Judge Maxwell; his opinion will be found in 27 Bull., 118. The judgment then rendered was reversed by the circuit court, and the case remanded for a new trial; see 7 Ohio Circuit Court, 458. The case was heard again in the common pleas court before Judge Wilson, whose opinion has not been printed. The judgment rendered by him was also reversed by the Circuit Court, and the case remanded for a new trial; see 10 Ohio Circuit Court, 205, where a full statement of facts is given. The opinion here reported was given on the subsequent trial of the cause in the court of common pleas, after this reversal.)

WRIGHT, J. (orally at conclusion of argument.)

I shall not undertake a lengthy discussion of the case, but shall give attention principally to the main and determining features as urged by counsel.

In the first place, it is claimed, by counsel for plaintiff, that the failure to return the $150,000 worth of other stocks, which were taxable, and which, as counsel say, Phipps knew were taxable, makes the whole return false, under the provisions of Section 2781 of the Revised Statutes.

Now, the question is, was the Ft. Wayne stock omitted by Phipps from his return for taxation?

The purpose of the law is, no doubt, only to tax that property which the citizen was not justified in omitting; and not to tax him upon that which he was justified in omitting. If he was justified in omitting certain items, he cannot be taxed upon those items, because he fraudulently omitted some other items. If he is taxed at all upon omitted items, it must be because he fraudulently omitted those items; not because he fraudulently omitted others. All his property, both taxable and non-taxable, is not subjected because he omitted the taxable,—and the Ft. Wayne is untaxable,—except in one contingency, which is, that he fraudulently omitted it; not something else. And the Ft. Wayne remains untaxable until it appears that he falsely omitted it.

The idea that I have concerning the effect which is to be given to the evidence of his omission of this $150,000 worth of other taxable stock, may be conveyed by an illustration: Suppose a man be charged with uttering a counterfeit dollar. He is not precluded upon the question of

his knowledge of the character of the dollar, even though it conclusively appear that he knew the character of some counterfeit half-dollars uttered by him upon the same occasion. It may amount to proof convincing, or proof very weak, but it is not conclusive. The weight of it is to be determined by circumstances. If the half-dollars were so bad as to be patent counterfeits, and the dollar was equally as vicious in appearance, the conclusion might be irresistible. But if the half dollars were so bad, and the dollar good enough to deceive an expert, and the man uttered several other genuine dollars along with it, the other conclusion would be irresistible,— if you knew that the man had the bad dollar and the good dollars from a bank, in a sealed package, which he had never yet opened. If Phipps on the stand as a witness in the case, had been asked, on cross-examination, "Did you not omit that $150,000 worth of stocks at that time?" And he had said, "Yes." And had been asked the question, "Did you not know that they were taxable, and did you not omit them for the purpose of defeating the tax law"? And he had said, "Yes," to that question, then the evidence would be very strong as indicating that his intention, when he omitted the Ft. Wayne stock, was a fraudulent intention. But the evidence has not been presented in that form. While it appears that Phipps did omit the $150,000 worth of other stock, and while it appears that that other stock was taxable, yet what is the evidence which tends to show what the active belief, or the active purpose, in the mind of Phipps, was when he omitted this $150,000 worth of taxable stock?

As the trial progressed it was developed, partly by way of evidence, and partly in the course of the argument, that Phipps subsequently admitted that this stock was taxable, and that payment was made upon this particular $150,000 worth of stock. Yet the additional fact appeared that the amount of taxes paid by Phipps, under this admission, was not the full amount of the tax which was charged by the Auditor, which brings in at once, the question of the presence of a compromise of the matter, and which occasions an inquiry, coming along with it, whether, in this omission, Phipps was actuated by an affirmative fraudulent purpose, or whether his action was under the condition of indolent belief, such as is defined by the Supreme court in the Ingalls case. Because, mark you, in my judgment this evidence is only admitted for one purpose; for the purpose of indicating what the intention of Phipps was when he omitted the Ft. Wayne stock. If it plainly appear that he had the positive purpose to defeat and defraud, by his omission of the $150,000 worth of stock, it might be reasonable to attach that purpose to his conduct with reference to the Ft. Wayne stock. But if it should appear that he had no such active fraudulent purpose in the omission of the $150,000 worth of stock, but that his omission in that regard was simply a piece of passive negligence, then no stronger inference than that could be attached to his conduct in the omission of Ft. Wayne stock, from the fact of his omission of the $150,000 worth of other stock. Now, there is no more evidence in the case in regard to the reason and the cause of his omission of the $150,000 worth of stock, than enough to raise an inference that he omitted it under a negligent, indolent belief. There is no evidence which indicates that he had an active, positive purpose, a deceitful, deceiving condition of mind, which could be attached to his action in regard to the Ft. Wayne stock.

And so the only effect of the evidence is to raise what might be said to be a prima facie inference against Phipps that he had a negligent, indolent belief in regard to the Ft. Wayne stock, which would not excuse him

for failing to return it for taxation, unless he were able to show affirmatively such a condition of fact, by presentation of evidence on that point, as would rebut, overthrow and destroy this presumption.

Passing to the next claim that is made by counsel for plaintiff, it is urged that there is no evidence that Phipps made inquiry about the taxability of the Ft. Wayne stock. There is evidence which tends to establish that he did make inquiry,—for instance, the evidence of Calvert, if I remember the name of the witness. Yet, were there no such evidence, were there no evidence at all, that he made inquiry, it would make no difference. The taxpayer can be held to inquiry only for the sake of making himself informed. If he be informed without inquiry, that information is none the less information because it came to him unsought. A man's mind compasses his knowledge. What he knows is present to his mind, whether he acquired it by eager inquiry, or whether it was thrust upon him against his volition. Now, here we are concerned with that which was present to the mind of Phipps, and not with how it came there. If he believed the stock to be untaxable, and had present to his mind sufficient information to justify that belief, then he is excused. Whether some one carried him the information, or whether he went forth in active search of it, is of no moment. If he went abroad in quest of information, and found enough to justify his belief, then he was under no duty to look further, but is excused; not because he searched, but because he had information. So, if he had sufficient information without going forth in search of it, again he is excused. The searching, or the not searching, the inquiry or the non-inquiry, is of no account, so long as the information present to him was of sufficiently convincing character to justify his belief. If the taxpayer's belief is justified by his information, then his belief is not an indolent belief; for if it were an indolent belief it could not be justified.

It is contended that it must be affirmatively proven that his action in failing to return was based upon his belief, and was occasioned by his belief. Is there no such relationship between cause and effect as will connect the effect with a natural cause unless the natural cause is joined to the effect by independent affirmative testimony?

If we assume that Phipps omitted property which he believed was not taxable, we confront ourselves with a fact which would naturally result in omission. No other reason for the omission appearing, do not we then conclude that the effect was produced by the natural cause which existed and which was the only known cause? If he believed it non-taxable, he would omit it because of his belief. If he had a belief which would cause him to omit, then, until the contrary is shown, it will be assumed that such belief actuated the omission.

It is said, again, that there is nothing to show that he believed; nothing to show that the facts which came his way made any impression. If knowledge upon the part of Phipps be shown such as would occasion a reasonable man to believe, the presumption arises that Phipps believed. If the facts which came his way would have impressed a reasonable man, the presumption arises that they so impressed Phipps. And these presumptions prevail until overthrown.

In this connection, this illustration was made by counsel; "If a bullet comes my way, am I hit?" To which I answer "Not necessarily." And, in response, I make use of this; "If a cannon shot comes your way and hits you, is any further proof required than that, to establish, beyond controversy, the fact that there was some impression made by the collision?

The case of Phipps is not covered by the illustration of counsel. The

bullet must be likened unto the facts. It is shown that the facts not only came Phipps' way, it is shown by the evidence, that he knew of these facts.

These facts, standng alone and independently, are such as that no man could have known of them without having been impressed by their existence.

This further proposition is advanced: The Supreme Court having decided in the case of Ratterman against Ingalls, that the stock was taxable, therefore the stock as a matter of law was taxable in 1887 and prior years, and Phipps is conclusively presumed to have known the law in 1887 and in other years, and hence, presumed to have known that this stock was taxable when he omitted it. To adopt this proposition under the circumstances of this case, would be iniquity pure and simple. For 34 years this stock was not only regarded as non-taxable, but it was a matter of public notoriety that the stock was of a non-taxable character. By common consent a positive character had been attached to the stock,— that of non-taxibility. Investors sought it, not alone because they believed it non-taxable, but because by universal custom and opinion the fact was established that it was non-taxable. Laws have been as often made by custom of communities as by legislative bodies; and, while it is not concluded that the custom made the law for this stock, yet it is established that the custom made a characteristic and attached it to the stock, which was that of non-taxability. The taxing department of the state which was of jurisdiction here, had for that length of time not only failed to tax the stock, and concurred in the general opinion, and maintained the practice of not taxing, but also declined to tax when ownership of the stock was disclosed to them. I believe that Phipps knew of all this. He knew, in addition, of particular instances wherein for several consecutive years the stock had been returned to the county auditor as a non-taxable investment,—notably the case wherein the returns were displayed to him by Calvert, the secretary of the insurance company,—and had been received by the county Auditor as such. He knew that eminent lawyers regarded the stock as non-taxable, and had so declared in the shape of a formal legal opinion. He believed it, in their judgment, non-taxable. Everybody else believed it non-taxable. The county auditor would not tax it. And Phipps was justified, by the conduct of the taxing department of the state, in assuming that the state regarded it as non-taxable, and was justified in assuming that the law was that it was non-taxable. Under these conditions, to stop his mouth with any such phrase as "*ignorantia legis haud excusat,*" would be to throttle him with a presumption so fallacious as to be ridiculous; to judicially declare that he knew what we are convinced neither he nor anyone else knew; to brand him as a defrauder because he confided in the belief that the taxing department of the state knew its business and was transacting its business according to law; to brand him as a defrauder because he had no individual opinion against the opinion, not only of the public in general, but of the taxing department of the state from the head of it down to the auditor of Hamilton county, it seems to me, would be to work out in the administration of law, not justice, but a *reductio ad absurdum.*

Now the discussions of these propositions as they were urged by counsel for plaintiff, were mainly to the effect that these several matters raised against Phipps conclusive presumptions which would determine the case against him. My short discussion of them has indicated that, in my judgment, none of the presumptions which are urged by counsel for plaintiff as conclusive against Phipps, can be held under the law, to be conclusive.

In regard to the claim that Phipps must be presumed to have known the law during the year 1887 and the years prior thereto, we are not put to the necessity of adopting the argument urged by either counsel in this respect,—one side contending that the law was that the stock was not taxable; the other side contending that the law was that the stock was taxable,—by reason of the provisions of Section 2781 of the Revised Statutes. As showing the application of what I have in mind, suppose a tax payer, as a matter of fact, in good faith omit his property from taxation, and is justified in omitting that property from taxation. Then suppose a suit analogous to this is brought against him, and the only question in the case is whether he knew the law, or whether he did not know the law. If it is to be conclusively presumed against him that he knew the law, then all that need be said in favor of the auditor's case against the tax-payer is: "You knew the law. The law made this stock taxable." And then, no matter how innocent the belief of the tax-payer, no matter how well justified the belief of the tax payer, yet there can be no possible escape for him. Such a conclusion as that cannot be reconciled with the provisions of section 2781, and cannot be reconciled with the decision of the Supreme Court in the Ingalls case, and other cases. Because the effect of section 2781 is just this: to make it an issue of fact whether or not the tax-payer knew the law; and if he did not know the law, to introduce the further issue of fact as to whether or not he was justified in not knowing that his property was taxable, under the law. In other words, as said by counsel, the legislature did not intend to punish a man who, in good faith, had mistaken the law.

Now, in argument it is said, "What will the court think of the judge who decides a case after hearing one side only, and without investigating as to the claims that could be made by the other side?" To which I answer, the illustration is not pertinent here. It cannot be said that Phipps only investigated upon the one side of the question, his side, the non-taxable side. One side of the question was his side. The other side of the question was the side of the county auditor. Phipps was not limited, in his knowledge, to his side of the question, if I may so put it. Because he had knowledge concerning the other side, which was the position of the county auditor in regard to this stock. He had knowledge concerning both sides of the question. He knew that the practice of the county auditor was not to tax this stock. He knew that the county auditor had declined to tax this stock when it was returned to him in writing upon tax blanks, under the head of "non-taxables." Therefore the illustration, as I have before said, is hardly in my judgment, pertinent.

It is further urged by Mr. Goss, that "They"—meaning the defendants—"have no case wherein any county auditor has said that the stock was non-taxable." No; but they have the case here, wherein it was so generally the opinion, of county auditors and of lawyers and of members of the community, that the stock was non-taxable. There was no occasion, by reason of the strength of that opinion, for any county auditor, at all, to say that it was not taxable. The fact that it was not taxable was concurred in without question, both by county auditors and by individual members of the community.

So we are brought finally, to the consideration simply of questions of fact. And, before considering them I desire to attend for a moment, to the claim which is urged by counsel for plaintiff, that there is no evidence in the case which justifies the court in coming to the conclusion that, as a matter of fact, Judge Ranney and Mr. Tilden had ever given an opinion. Now while at first blush that position might seem to be well taken and the point well raised, yet we are dealing with "ancient matters," as they

have been termed in argument.    These opinions were a matter of common notoriety.    These opinions were things in the existence of which and in the identity of which the public acquiesced.    Everybody acquiesced who undertook a part in this discussion.    Therefore, after the lapse of so many years, it being proven by the reputation which was current concerning these opinions, that they were commonly regarded as opinions from Ranney and Tilden, that evidence is sufficient to establish the fact that they were, in fact, the opinions of Tilden and Ranney, until the contrary is proven by other testimony.

But even this is immaterial to the case, because it matters not in the consideration of the effect of these opinions upon Phipps' mind, whether they were really opinions that were given by Tilden and Ranney, or whether he believed that they were their opinions, and was justified in the belief that they were the opinions of those gentlemen.    Any man who dealt with the subject would have been justified in believing, under the circumstances under which these opinions were made public, that they were the opinions Ranney and Tilden; and, being justified in believing that, he would be entitled to give those opinions such weight as they would carry with them if they were the opinions of Tilden and Ranney.

Again, it is said that the decisions of the Supreme Court, beginning with the decision in the Sherman case, were such as to make it matter of common knowledge in the community, that this stock was taxable stock.    I might here premise by saying that while, under the rules of evidence, the action of public officers and of public bodies are admissible in evidence upon the theory that everybody within the jurisdiction of those tribunals is familiar with their action, yet that presumption is not conclusive.    It is sufficient to establish the fact that the individual was familiar with the action, if, in the judgment of the tribunal before whom the case is being tried, he ought to have been.    But it shall always be determined by the trial judge, or by the trial jury, after the evidence is admitted as to the action of the public body, whether or not, under the circumstances of the case on trial, it should be assumed, or ought to be assumed, that the individual had that knowledge.

Now, there are some of these matters which it would be fair under the circumstances of this case, to assume that Phipps had knowledge of.    There are others of these matters that it would be ridiculous to assume that Phipps had knowledge of.    For instance, it would be ridiculous to assume that Phipps had any knowledge concerning the intricate distinctons of law that were made by the Supreme Court.    While it may be well said that a man would be familiar with the general results of the opinions of the Supreme Court, provided he has any interest in the case that was before it, yet it is not, in all cases, to be assumed that the man had every conceivable knowledge that a man could have from a close study of the case as reported, simply from the fact that the court announced a general opinion in the case, which was made public.

Now suppose the case of Sherman were known to Phipps; what significance would he be likely to attach to the result of that decision of the Supreme Court?    What it decides is, that the Ft. Wayne company was not an Ohio corporation.    Does that necessarily carry with it the inference that the stock of the company was taxable in Ohio?    Under the circumstances of this case it does not; because Phipps knew, independent of that decision, that the practice of the county auditor for Hamilton county was to exempt this stock from taxation, not because it was the stock of an Ohio corporation, but because it was the stock of a corporation which listed its property in Ohio.    The blanks of the assessor said so.    The blanks of the assessor proclaimed abroad that stocks of corporations

listing property in Ohio were not taxable.  Phipps had seen a blank which had been returned to the auditor, wherein, under the head of "Ft. Wayne stock" it was returned as non-taxable stock; and he was informed that when that return was presented to the auditor, he had declined to tax the stock, and had accepted the return as a correct return.  Therefore, he was justified in believing, even in the face of the decision in the Sherman case, that, even though this company was not an Ohio corporation, yet this stock was non-taxable stock, by reason of the fact that it listed property in Ohio.  He was entitled to believe that it listed property in Ohio if he knew nothing else except that the auditor had received it as a corporation which listed property for taxation in Ohio.

Coming, then, to the evidence in the case, having considered what effect is to be given to these presumptions which are claimed to be conclusive presumptions; in the first place, as I have already indicated, it has been proven that for a space of 34 years, that portion of the community which were interested in the subject of the taxability of stocks, believed, and it was common report amongst them, that these stocks were non-taxable stocks.  The stocks had been regarded by the taxing department of the state, from the state auditor down to the auditor of Hamilton county, as non-taxable stocks.  The attention of the county auditor of Hamilton county had been drawn to the fact that the stocks were held in Hamilton county.  The county auditor had conducted the affairs of his office in Hamilton county, for many years, with this knowledge, and in such way as to establish the practice of not taxing this stock, when it was brought to his attention.  The stock, as a matter of fact, never was taxed up to this time by the auditor of Hamilton county, and Phipps knew, by reason of what had been displayed to him by Mr. Calvert, that the county auditor did not tax this stock when it was presented to him; and, therefore, knew that the county auditor regarded this stock as non-taxable stock.

These conditions of fact, it seems to me, justified not only Phipps, but justified any man in believing that the stock was non-taxable.  Particularly would it justify a layman when, with the knowledge of the particular facts, the most eminent lawyers hereabouts were of the opinion, on the plain law, considering(for we must presume that they considered,) the cases decided by the Supreme Court, that the stock was non-taxable.  When lawyers of eminence, of great ability and of known standing are of the opinion that a stock is not taxable, and when a layman knows of the opinions of these men, it seems to me that the laymen has pretty good justification in assuming that he knows the law, simply from the fact that he knows what eminent lawyers have said concerning their belief as to the law.

. Therefore, I conclude upon that one proposition, that Phipps was justified, from the circumstances,—not which came his way alone, but which hit him, in the sense of the illustration used by counsel,—and from the information that he had, in believing that this stock was non-taxable.

The other question remains, did he *really* believe that they were non-taxable?

As I have already indicated, where you have an act upon the part of a man, and the natural cause for the act, and that is all you do have, the natural inference arises that his action was the result of the natural cause, which is the only cause present for his action.  And so the inference would be, here; that Phipps, having reasonable ground to believe that the stock was non-taxable, and having omitted it from taxation, omitted it because of his belief.

The only circumstance in the case which tends to show that there was another cause for his omission than this belief, is the circumstance which I first considered, of his having omitted $150,000 worth of other taxable stock. Now the evidence upon the point as to the information that he had, and upon the point of justification of his belief, is so strong in my judgment, as to overthrow altogether, that prima facie presumption which may be said to have arisen concerning his failure to return the $150,000 worth of other stock, that he failed to return the Ft. Wayne under an indolent, negligent belief. I say that the nature of the information that he had is so strong as to overturn the prima facie presumption, altogether.

Therefore I am entirely satisfied, without going into any more matters of detail, such as the fact that his father regarded the stock as non-taxable, and the fact that he knew that his father had failed to return it for several years before, as the return was displayed to him by the witness Nichols. I say without stopping to consider at length these minor details, the matter is established, to my mind, that he believed the stock non-taxable, and that he was justified in his belief.

Now as to the year 1887. It is claimed by counsel for plaintiff, that the fact that the auditor undertook to tax this stock before Phipps made his return, and that Phipps knew that the auditor held that stock to be taxable, is conclusive proof upon the question as to whether or not Phipps, under those circumstances, could be excused for failure to return for that year.

Without undertaking to analyze the argument of the counsel in that respect at great length, the result of his argument is this, finally; that no man is justified in omitting from his return property which the auditor holds to be taxable. If the argument is sound, then if a tax-payer has property in Kentucky, and the auditor of Hamilton county, says "I tax property which is in Kentucky," the taxpayer must return that Kentucky property for taxation. If there be in a man's possession property which is absolutely exempt from taxation, say United States bonds, and the auditor says "I am going to tax United States bonds," then, under the argument that is made in this regard, the duty of the tax-payer is to return this exempted property, simply because the auditor says that he is going to tax it. Now, that position may not be maintained.

In spite of the action of the auditor in proposing to tax, a man may believe, and may be justified in believing, that the auditor is wrong. If he does so believe, and if he is justified in that belief, he is excused. Because the question is not "what does the auditor propose to tax?" but the question is "is the man justified in omitting that property which he failed to return?"

Now, while it is conceded, and must be conceded because it was the fact, that the auditor undertook to tax this property in the year 1887, I think it was, or in 1886, one of those years; yet that is not all there was in the matter. It was generally considered by the public that the auditor was not right. In fact, it was very generally not only considered, but stoutly maintained, by all people interested in the handling of stocks, that the auditor was making a mistake. It was the current opinion, in my judgment, from the evidene as to that time, that the auditor was wrong in his claim that this stock was taxable.

I am of the opinion that Phipps believed that the auditor was wrong. If he did believe that the auditor was wrong, and if he was justified in believing that the auditor was wrong, then he was justified in withholding his property from the return.

Now, the peculiar circumstances which attached to this stock as a characteristic had attached to it so long as to make it a thing not to be

stripped of its characteristics in a moment, or by a breath. In the first place,—without using the phrase in an offensive sense, but simply because it was used by the witnesses who undertook to describe it,—it was commonly regarded, amongst capitalists and investors, as a raid by the auditor; as a thing that he was doing, not because he really believed that it was his duty to do it, but because he thought that if he did do it, that he might be right in doing it, and if it did turn out afterwards to be right, there would be gain to somebody. I say, that is the condition, I believe, that the minds of many men were in concerning the action of the auditor

It is fair to assume, and I do assume and find, that that was Phipps' belief in the matter; that Phipps believed that the auditor was wrong; Phipps believed that his stock was not taxable, in spite of the fact that the auditor said he was going to tax it.

Now, to proceed a little further; after the inauguration of the action upon the part of the auditor, the matter went to the state board of revision, after the auditor had undertaken to place the stock upon the tax duplicate. They did not come out with any plain opinion and say, "yes, the stock is taxable." The result of their deliberation and finding upon the matter was such as to confirm the reputation which the stock had had prior to the time that the auditor began his proceedings against it. Because their findings was in line with the existence of and with the truth of the reputation which the stock had so far had, of non-taxability. It was commonly regarded, not only by the Board of Revision, but by the newspapers and by everybody who was interested with the question, that the matter could only be settled by the courts; the action of the auditor was regarded as an action which was to test the question, rather than as an action which was to determine the question.

I believe that Phipps was of the same opinion with Mr. Ingalls and many others of the witnesses; the same opinion with every other witness who had expressed himself upon the subject;—that the supreme court would ultimately hold that the stock was non-taxable.

So we have the county auditor thus seeking and undertaking to upset and overturn this characteristic which had attached to the stock for thirty four years; which had been acquiesced in by the action of county auditors for that length of time; which had been acquiesced in by the public generally, and by investors and capitalists in particular; and the belief upon the part of Phipps, and upon the part of everybody else who expressed themselves, that the action of the auditor was but to test the question. They did not believe that the action of the auditor determined the question. They believed that it could only be determined by the Supreme Court; and they believed that the Supreme Court would determine it to be non-taxable.

Under these circumstances, I must find, as already indicated might be found in cases analogous to this, that the act of the auditor did not destroy, and did not have much tendency to destroy, the reputation and the character which had adhered to this stock. Therefore, that Phipps believed that the auditor was wrong, believed that the stock was non-taxable when he made his last return, and was justified in the belief.

The judgment will be for the defendants generally.

W. L. Avery and L. W. Goss, counsel for plaintiff.

John W. Warrington and Wm. Worthington, counsel for defendants.